UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BASIN AND RANGE WATCH, | Case No. 2:16-CV-403 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| BUREAU OF LAND MANAGEMENT AND THE U.S. DEPARTMENT OF THE INTERIOR, | |
| Defendant(s). | |

Presently before the court is plaintiff Basin and Range Watch's motion for attorney's fees. (ECF No. 43). Defendants Bureau of Land Management ("BLM") and the U.S. Department of the Interior ("Interior") filed a response (ECF No. 58), to which plaintiff replied (ECF No. 59).

**I.      Facts**

The present case concerns Freedom of Information Act ("FOIA") requests related to the Crescent Dunes Solar Energy Project ("Crescent Dunes"). (ECF No. 1). Crescent Dunes is privately operated by Tonopah Solar Energy, LLC ("Tonopah"); however, as the facility is located on public lands, BLM and Interior manage the land pursuant to a right of way/lease. (ECF No. 58).

On January 14, 2015, an unfortunate accident occurred at the facility. During a test to calibrate the facility's equipment, technicians arranged the facility's mirrors to concentrate sunlight above a solar power tower. (ECF No. 1). During the test, between 115 and 130 birds flew through the area of concentrated sunlight and suffered fatal burns. *Id.* (ECF Nos. 20, 23).

On February 26, 2015, plaintiff sent BLM two FOIA requests, with the first requesting video footage of the event and the second requesting documents related to the testing and operation

**James C. Mahan**
**U.S. District Judge**

of Crescent Dunes. (ECF No. 1). These requests, along with two other document requests and a subsequent appeal to the Interior's FOIA appeals board, are the subject of this lawsuit.

BLM gave Tonopah a chance to review the requests and object to the release of information. (ECF Nos. 22, 43). Tonopah responded with its opinion that the video was protected information that was privileged from disclosure pursuant to exemption 4 of the FOIA (5 U.S.C. § 552(b)(4)). (ECF No. 22-9). Tonopah further requested redaction of particular documents, again citing exemption 4. (ECF No. 22-10). Tonopah cited in support of the redaction request its commercial interest in operating a for-profit solar facility and the competitive advantage that proprietary information regarding environmental impact offered Tonopah as related to obtaining regulatory approval for operation of its facility. *Id.*

In October of 2015, BLM released the video to plaintiff. (ECF No. 1). On October 21, 2015, BLM notified Tonopah that it intended to release documents to plaintiff over the objection of Tonopah. (ECF No. 43). On November 18, 2015, BLM mailed its responsive documents to plaintiff. (ECF No. 20-1). "BLM produced 257 pages of documents, but withheld three pages in full and 15 pages in part under FOIA Exemption 4." (ECF No. 43). BLM offered the following rationale for withholding:

> The material withheld contains proprietary information regarding the internal procedures of the company whch should remain proprietary, disclosure of this information may cause harm to the competitive position of the person from whom the information was obtained and/or 2) harm the government's ability to obtain it in the future. Therefore, this information is confidential for the purposes of Exemption 4 and we have withheld it.

(ECF No. 23-8).

On December 17, 2015, plaintiff appealed BLM's partial denial of its request for production to the Interior's FOIA appeals office. (ECF No. 43). The FOIA appeals officer informed plaintiff's lawyer that Interior received the appeal. (ECF No. 20-3) (Declaration of Darrell Strayhorn) ("I spoke with Plaintiff's attorney and acknowledged that the Department received the FOIA appeal. I also advised him that my office would contact him again if there were any issues with the appeal submission. As there were no issues with the Plaintiff's appeal submission, my office did not contact the Plaintiff's attorney."). There were 275 appeals ahead of plaintiff's at the time plaintiff filed its appeal. *Id.* Plaintiff filed follow-up letters with the office

James C. Mahan
U.S. District Judge

- 2 -

to no response, (ECF No. 43), and filed suit in this court two months later (on February 26, 2016). (ECF No. 1).

The parties engaged in initial discussions regarding the disputed documents, but could not come to a resolution. (ECF No. 43). On July 5, 2016, defendants filed a motion for summary judgment. (ECF No. 20). On August 9, 2016, plaintiff filed a cross-motion for summary judgment. (ECF No. 21). On September 14, 2016, defendants informed plaintiff that BLM had decided to release all of the disputed documents because Tonopah had withdrawn its objection to the release. (ECF Nos. 33, 43).

The parties held settlement negotiations focused primarily on attorneys' fees and costs, which proved unsuccessful. (ECF No. 43). Plaintiff filed a motion to re-open discovery to research plaintiff's eligibility for and entitlement to attorney's fees. (ECF No. 32). After plaintiff filed its motion, defendants agreed not to dispute plaintiff's eligibility for attorneys' fees and to limit the documents upon which defendants would rely to oppose any motion for attorney's fees. (ECF No. 43). Thereafter, plaintiff filed the instant motion. (ECF No. 43).

**II.     Legal Standard**

The FOIA provides that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant must demonstrate both eligibility for a fee award and entitlement to a fee award. *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991).

"[T]he attorney fees provision of the [FOIA] statute has as its fundamental purpose the facilitation of citizen access to the courts to vindicate the public's statutory rights." *Exner v. FBI*, 443 F. Supp. 1349, 1351 (S.D. Cal. 1978) (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)). "Congress realized that an allowance of fees and costs was necessary in FOIA actions to encourage full public disclosure of government information." *Id.* at 1352. "Congress has made a clear determination that an award of attorney's fees is appropriate and desirable whenever a complainant prevails in FOIA litigation." *Id.*

James C. Mahan
U.S. District Judge

**III.     Discussion**

Here, the parties have stipulated that plaintiff is eligible to recover attorney's fees under the FOIA. *See* (ECF Nos. 43, 58). The court holds that plaintiff is a prevailing party as defined in the FOIA because plaintiff obtained the previously withheld documents from defendants that were the subject of the instant litigation.

    a. *Entitlement to attorney's fees*

Under the FOIA, "the district court has discretion to determine whether the plaintiff is entitled to fees." *Or. Natural Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009). Courts generally consider four factors when determining if a plaintiff is entitled to attorney's fees: "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in the law." *Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 492 (9th Cir 1983). These factors are not exclusive, and courts "may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate." *Long*, 932 F.2d at 1313 (internal quotation marks omitted).

    1. *Public benefit deriving from the case*

The public benefit factor is satisfied where the litigation "is likely to add to the fund of information that citizens may use in making vital political choices." *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979). "[T]he public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest . . . if it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016).

"To have potential public value . . . the request must have at least a modest probability of generating useful new information about a matter of public concern." *Id.* (internal quotation marks omitted). "[R]eleased documents have an insufficient public benefit when they pertain to such highly particularized interactions with an agency that non-participants would have only a limited

James C. Mahan
U.S. District Judge

- 4 -

interest in the records as a means of learning what the agency was doing." *Dorsen v. SEC*, 15 F. Supp. 3d 112, 121 (D.D.C. 2014).

Plaintiff asserts that it requested the disputed information from defendants for the public benefit. (ECF No. 43). Plaintiff cites its organizational purpose—informing the public about problems raised by industrial scale energy projects and holding government agencies accountable—in support. *Id.* Plaintiff asserts that defendants' delays in processing plaintiff's FOIA requests for the video and for documentation relating to the testing incident "seriously compromised [plaintiff's] 'ability to disseminate information about the Crescent Dunes Solar Energy Project to the public and to hold [defendant] accountable for ensuring that the birds and other resources receive adequate protection during the project's operations.'" *Id.* (citing Emmerich Decl.).

Defendants argue that the information obtained through this litigation does not benefit the public. (ECF No. 58). Defendants note that almost all of the information that plaintiff has made available to the public was procured via "garden-variety FOIA requests and through other public sources, not through this lawsuit." *Id.* Defendants further argue that the specific information that was initially withheld and ultimately released during the course of this lawsuit "relates to technical aspects of the plant operation issues that do not rise to the level of public interest." *Id.*

Plaintiff argues in its reply that defendants "ignores the public benefit in understanding how the *BLM* reacted to the bird incineration event and proposed mitigation–a key element of Basin and Range Watch's goal in seeking documents related to the event." (ECF No. 59).

As defendants note, plaintiff disseminated information related to the plant's mitigation efforts in October of 2015, six months prior to filing this lawsuit. (ECF No. 58). Prior to the filing of this lawsuit, defendants provided plaintiff with the video of the incident and with 257 pages of related documentation (withholding three pages in full and 15 pages in part). (ECF No. 43). Plaintiff does not cite to any particular information that it obtained during this lawsuit that was of public concern. The court holds that this lawsuit did not procure a public benefit in the form of access to information that was of public concern. *See Dorsen*, 15 F. Supp. 3d at 121.

Plaintiff cites to a news article referenced in Kevin Emmerich's Second Declaration titled "Bird deaths at Nev. plant remain a mystery." (ECF No. 47-2) (E&E News Greenwire article by

James C. Mahan
U.S. District Judge

- 5 -

Phil Taylor, dated August 31, 2016). Plaintiff cites the article to suggest that the public has an ongoing interest in bird mortality at the project. (ECF No. 59). The article stands for that proposition, but it also demonstrates how much information was publicly available prior to plaintiff's receipt of the disputed documents in this case. *See* (ECF No. 47-2 at 4) (discussing Stantec and GBBO findings; referencing SolarReserve engineers "solution to the problem;" and discussing post-incident correspondences between BLM and stakeholders). Notably, the article was written 15 days prior to BLM's release of the disputed documents that are the subject of this litigation.

Plaintiff's second public benefit argument concerns how BLM responds to FOIA requests. In its motion, plaintiff insinuates that BLM was unresponsive to plaintiff's requests for updates. *See* (ECF No. 43 at 15) ("After BLM missed the statutory deadline for providing responses, [plaintiff], and later its counsel, made a half-dozen requests to BLM for an estimated completion date on the requests. BLM never responded to these requests, either formally or informally."). This argument is belied by plaintiff's own attachments to its counter-motion for summary judgment. Exhibit 6 to the Declaration of Kevin Emmerich contains an email correspondence between Emmerich and Michelle Piland (BLM's state records administrator). (ECF No. 23-7). The email correspondence contains a back-and-forth lasting until September 3, 2015, whereby Piland explains the potential causes of the delay in BLM's processing of plaintiff's request.[1] *Id.*

Although BLM appears to have taken a significant amount of time in processing the request, well over the 20-day statutory deadline, BLM was appropriately responsive to plaintiff's correspondences. Further, there is no evidence in the record that BLM purposefully or unnecessarily delayed its release of the video and documents.

Plaintiff argues that BLM has changed its practices since plaintiff filed this litigation, as now plaintiff gets more immediate responses to its FOIA requests. (ECF No. 43). Plaintiff's argument is unpersuasive for two reasons. First, plaintiff does not compare the relative complexity

---

[1] To the extent plaintiff argues that BLM did not respond to Mr. Becker's letters (dated September 15, 2015, October 2, 2015, and October 16, 2015), BLM released the video in late October of 2015 and provided its response and final determination on the documents request on November 18, 2015. (ECF No. 23 at 10). When considered in context, these qualify as responses.

of the disputed requests with that of its more recent FOIA requests. While the disputed requests pertained to information that a private contractor and the BLM thought could be withheld under exemption 4, plaintiff does not explain whether its more recent FOIA filings requested potentially privileged information or were simply "run of the mill" requests.

Second, plaintiff equates correlation with causation. Evidence of BLM responding in a timely manner to recent requests, standing alone, does not certify a causational link between this litigation and BLM's "improved" response time. Plaintiff does not provide any evidence of BLM's response time prior to the testing incident request.[2] The turnaround time for the testing incident request could have simply been an outlier. Further, plaintiff cites no formal shift in policy or other evidence that this litigation catalyzed a change at the BLM.

The information contained in the disputed documents was of limited interest to the general public, as prior FOIA requests and other publicly-available information provided the public with information regarding the testing incident and BLM's response. *See Dorsen*, 15 F. Supp. 3d at 121. Further, plaintiff has not demonstrated that BLM engages in a pattern or practice of violating statutory response deadlines or that this lawsuit somehow affected defendants' practices. Accordingly, the public interest factor weighs slightly against awarding attorney's fees. *See Dorsen*, 15 F. Supp. 3d at 121.

   *2. Commercial benefit to plaintiff and the nature of plaintiff's interest in the records*

The second and third criteria, the commercial benefit to the plaintiff from obtaining the information and the nature of plaintiff's interest in the records, are often considered together as they are closely related. *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). When a complainant is a public interest group, the second factor favors an award of attorney's fees.

---

[2] Plaintiff's cross-motion for summary judgment argues that it has demonstrated a "pattern or practice" of BLM's failure to respond to deadlines. (ECF No. 21 at 40). However, the motion relies solely on the BLM's response to plaintiff's three FOIA requests and one appeal related to the testing incident. *See id.* at 38–40; *see also* (ECF No. 23) (Declaration of Kevin Emmerich) (stating that plaintiff has sent defendants 29 FOIA requests since April 2010, but only mentioning the three testing-related requests as ones where "BLM has not met its obligation to provide final determinations within the 20 day deadline required under FOIA"). As defendants note in their response to plaintiff's motion for attorney's fees, there were 275 appeals ahead of plaintiff's at the time of filing. (ECF No. 58 at 4). Plaintiff does not discuss BLM's timeliness in hearing these appeals or responding to other FOIA requests. Accordingly, plaintiff has not demonstrated a "pattern or practice" of failure to respond to deadlines.

**James C. Mahan**
**U.S. District Judge**

- 7 -

*Scientology*, 700 F.2d at 493 n.6. Further, when the complainant seeks information for a public-interest related purpose, the third factor favors an award of attorney's fees. *Id.*

Plaintiff argues that it derived no commercial benefit from the FOIA request, and that the nature of its interest was dissemination to the public of information regarding the testing incident. (ECF No. 43). Defendants do not dispute plaintiff's discussion and conclusions regarding these factors. *See* (ECF No. 58).

3. *Reasonable basis in the law for the withholding*

The FOIA requires that federal agencies disclose records to any person upon request, unless the information falls within one of the narrow exemptions from the FOIA enumerated in 5 U.S.C. § 552(b). *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). A court's review of an agency's exemption determination is de novo. *See Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007) ("we do not give deference to the USPS's determination that the requested information was 'information of a commercial nature' and review de novo").

Courts often do "not award fees where the government's withholding had a colorable basis in law." *Scientology*, 700 F.3d at 492 n.6. The threshold for deciding whether an agency held a colorable basis in law is lower than the threshold required to support an actual exemption, meaning the agency need not prove that the information was in fact exempt. *La Salle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 486 (D.C. Cir. 1980).

Exemption 4 of the FOIA exempts from disclosure "matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Ninth Circuit has adopted in part the D.C. Circuit's test for confidentiality. *See G.C. Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994) (overruled on other grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)). "Information qualifies as 'confidential' for the purpose of Exemption 4 'if disclosure is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person for whom the information was obtained.'" *Id.* (quoting *Nat'l Park & Conservation Ass'n v. Morton*, 498 F.2d 765, 766–67 (D.C. Cir. 1974)).

James C. Mahan
U.S. District Judge

- 8 -

To establish that disclosure is likely to cause substantial competitive harm, an agency "must present specific 'evidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury.'" *Frazee v. U.S. Forest Serv.*, 97 F.3d 367, 371 (9th Cir. 1996) (quoting *GC Micro*, 33 F.3d at 1112). An agency "need not show actual competitive harm." *Id.* Further, the agency need not present a "sophisticated economic analysis." *GC Micro*, 33 F.3d at 1115.

Plaintiff argues that defendants lacked a reasonable basis in law for withholding the disputed documents. (ECF No. 43). Plaintiff asserts that Tonopah provided BLM with conclusory statements regarding the confidential nature of the withheld documents that did not meet the standards for withholding pursuant to exemption 4. *Id.* Plaintiff further argues that BLM was the party responsible for determining whether exemption 4 applied to the withheld documents, and BLM's apparent deference to Tonopah's assertions that the withheld documents contained privileged information was not a sound legal basis for justifying the withholding of documents. *Id.*

Defendants' response raises two primary arguments: impairment of access to future information and substantial competitive harm. (ECF No. 58). Regarding impairment, defendants argue that BLM reasonably considered the possible effect of disclosure on the quality of future information it would receive. *Id.* Regarding substantial competitive harm, defendants assert that they "reasonably determined that releasing the technical details about Crescent Dunes carried potential of substantial competitive harm because competitors could copy the pre-operations testing methods and the results of the testing." *Id.*

A. *Impairment*

Plaintiff asserts that disclosure in this case would not impair defendants' ability to retain information because the right-of-way/lease requires Tonopah to continually disclose information to BLM. (ECF No. 43). Plaintiff's argument overlooks the reality that if Tonopah knows that any information it provides to BLM is subject to disclosure via FOIA requests and/or an eventual lawsuit, it "may construe [the] disclosure requirement narrowly," thereby limiting the amount of information it offers to BLM. *See Wash. Post Co v. U.S. Dep't of Health and Human Svcs.*, 690 F.2d 252, 269 (D.C. Cir. 1982).

James C. Mahan
U.S. District Judge

- 9 -

1    The court holds that defendants have demonstrated a reasonable basis in law for their belief
2 that initial disclosure of the withheld information would lead to impairment of defendants' ability
3 to retain information from Tonopah going forwards. *See Wash. Post*, 690 F.2d at 269.

      B. *Substantial competitive harm*

Defendants assert that they had a reasonable basis for redacting certain documents because release to the public could cause Tonopah substantial competitive harm. (ECF No. 58). Plaintiff responds that neither Tonopah nor defendants made the necessary requisite showing of a likelihood of substantial competitive harm upon release of the information. (ECF No. 43).

Plaintiff argues that defendants deferred to Tonopah's assertions regarding what information was protected by exemption 4. (ECF No. 43). However, defendants disclosed the video and portions of the documents over the objection of Tonopah, who asserted that the video was confidential and some of the documents should be redacted. Therefore, defendants did not abdicate their duty to independently review the information and determine whether it qualified as confidential under exemption 4.

Plaintiff argues that BLM's release of the withheld documents after Tonopah withdrew its objection demonstrates that BLM deferred to Tonopah regarding whether exemption 4 applied to the information. (ECF No. 43). Plaintiff's argument is unconvincing. BLM could have maintained a reasonable belief that the withheld information contained confidential material, yet decided to disclose the information after Tonopah withdrew its objections to disclosure due to the mounting pressure of a lawsuit.

Defendants reason in their motion that withholding was proper under exemption 4 because "releasing the technical details about Crescent Dunes [would allow] competitors [to] copy the pre-operations testing methods and the results of the testing." (ECF No. 58) (citing (ECF No. 20-1)). Defendants cite the "competitive and rapidly expanding solar market" and the advantage that competition would obtain if given access to the technical details regarding Tonopah's facility and testing methods. "BLM determined that the information it redacted could be used by competitors to gain a commercial advantage and cause substantial competitive harm to Crescent Dunes' operators." (ECF No. 58). (citing (ECF No. 20-2)). BLM notes that its decision was based in part

James C. Mahan
U.S. District Judge

- 10 -

on communications with Tonopah, but asserts that it made the decision to redact itself.  (ECF No. 58).

The court holds that defendants have not demonstrated that they possessed a reasonable basis for concluding that exemption 4 applied to prevent disclosure of the redacted information. Although the redacted material contained proprietary information regarding the facility that BLM concluded fell within exemption 4, BLM has not provided relevant information regarding the solar energy marketplace or competitors of Tonopah.  Accordingly, defendants have not met their burden of demonstrating a reasonable basis for the belief that disclosure would cause Tonopah substantial competitive harm.  *See Frazee*, 97 F.3d at 371.

### 4. *Other factors*

Courts "may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate."  *Long*, 932 F.2d at 1313 (internal quotation marks omitted).  Here, the court notes the substantial delays by the BLM and the Interior in responding to plaintiff's FOIA requests in this case.  BLM has not adequately explained to the court in any of its filings the cause of the delay, which plaintiff notes is particularly hard to understand in the case of the video as defendants informed Tonopah several months prior to its release that BLM would release the video "in ten days."

### 5. *Summary*

After considering all of the factors above, the court holds that plaintiff is entitled to an award of attorney's fees.  Given that the information requested by plaintiffs was sought by a non-profit for a public purpose, and that BLM has not demonstrated a reasonable basis for its belief that disclosure of the withheld documents would cause Tonopah substantial competitive harm, the court holds that an award of attorney's fees is appropriate in this case.

### b. *The appropriate award*

Having determined that plaintiffs are entitled to attorney's fees, the court now considers the appropriate award.  Plaintiff requests $149,669.20 in attorney's fees.  (ECF No. 59). Defendants argue that plaintiff included billed hours in its request for work that is not recoverable, including hours expended at the administrative level prior to the filing of this lawsuit.  (ECF No.

**James C. Mahan**
**U.S. District Judge**

- 11 -

58). Defendants also suggest that any award of attorney's fees should be significantly reduced from the requested amount due to plaintiff's unreasonable litigation strategies. *Id.* Defendants assert that much of plaintiff's work product in this case was copied directly from drafted filings in previous FOIA disputes and that plaintiff's billing statements show multiple attorney's spending inordinate amounts of time working on the same tasks. *Id.*

Plaintiff requests the court award attorney's fees of $100,531 for work performed by David Becker prior to March 1, 2017. (ECF No. 44-3). This is based on 255.7 hours of work for which plaintiff seeks compensation. The court will decline to award any fees for Becker's work performed in 2015, as these hours relate entirely to administrative proceedings prior to the instant lawsuit.[3] Further, the court will reduce the 2016 and 2017 hours billed by Becker by 10% to reflect unnecessary billing. Accordingly, the court will award plaintiff $79,848.45 for work performed by Becker prior to March 1, 2017.

Plaintiff requests the court award attorney's fees of $18,117 for the work of David Bahr, and $15,266.25 for the work of Christopher Mixson, which totals to $33,383.00.[4] (ECF No. 43, 44, 45). Defendants argue that the court should reduce the attorney's fees requested by plaintiff here by 50%, which comes to $16.369.87.[5] The court will reduce plaintiff's request here by 40%, which results in an award of attorney's fees of $20,029.80 for the work performed by Bahr and Mixson.

Plaintiff requests $28,120.50[6] for 28.16 hours of work billed after defendants released the documents without redactions. Defendants request the court decline to award attorney's fees for work performed after the release of the disputed documents. (ECF No. 58). The court holds that the majority of these hours were not reasonably billed. Counsel spent an immense amount of time

---

[3] Notably, plaintiff's reply concedes that much of this time is not compensable. (ECF No. 59, 59-2).

[4] Neither Bahr nor Mixson have billed any compensable time since March 1, 2017. *See* (ECF Nos. 61-2, 62-2).

[5] This calculation also includes a reduction of $643.50. *See* (ECF No. 58 at 14).

[6] This includes $13,274.50 for 28.16 hours billed prior to March 1, 2017, and $14,846.00 for time billed since March 1, 2017. (ECF Nos. 43, 59).

**James C. Mahan**
**U.S. District Judge**

- 12 -

preparing and drafting the instant motion for attorney's fees, and some of its line items are unreasonably generic. The court notes that many of the tasks performed during this time period should not have been billed at the high billing rates requested by counsel. *See, e.g.*, (ECF No. 44-3 at 9) (formatting timesheets at $405 an hour).

The court will award attorney's fees for reasonably billed work after the parties resolved the dispute related to the documents. The court holds that $12,500 provides reasonable compensation for the work performed by Becker during this time period.

Based on the foregoing, the court will award plaintiff attorney's fees in the amount of $112,378.25.

The court will also award fees for expert declarants Braster, Lacy, and Boyle, as outlined in the attachments to Becker's declaration in support of plaintiff's motion for attorney's fees. *See* (ECF No. 44). The court holds that all costs billed in this matter were reasonably billed.

**IV.   Conclusion**

The court holds that plaintiff is entitled to attorney's fees under the FOIA, and will award attorney's fees and costs consistent with the foregoing.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for attorney's fees (ECF No. 43) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff shall prepare and submit to the court a proposed judgment consistent with the foregoing within twenty-one (21) days for signature.

DATED March 30, 2018.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**